IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MARK DAMRON, *et al.*,

    Plaintiffs,

v.                                            Case No. 3:10-cv-00698

DAN O'HANLON, Judge, *et al.*,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDATION**

Plaintiff, Mark Damron, is currently incarcerated at Saint Mary's Correctional Center in St. Mary's, West Virginia.[1] On April 30, 2010, plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 (Docket No. 2) and applied to proceed without prepayment of fees or costs (Docket No. 1), asserting causes of action against Judge Dan O'Hanlon, Warden William Fox, and the state of West Virginia. The following sixteen motions are pending before the Court: Plaintiff's Motions to Amend his Complaint (Docket Nos. 6, 16, 25, 26); Defendants' Motions to Dismiss Plaintiff's Complaint (Docket Nos. 9, 13); Plaintiff's Motion for appointment of counsel (Docket No. 17); Plaintiff's Motions for discovery (Docket Nos. 18, 22, 36, 37, 38); Defendants' Motion for a Protective Order (Docket No. 27), and Plaintiff's Motions for a jury trial. (Docket Nos. 33, 34, 35).

This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for

---

[1] West Virginia Division of Corrections Website
http://www.wvdoc.com/wvdoc/OffenderSearch/tabid/117/Default.aspx (*visited* October 4, 2010).

submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket No. 39).

I.     **Procedural History**

On September 19, 2003, plaintiff was charged in a seven-count indictment related to two fires that were set on August 9, 2003 at a building located at 2421 Third Avenue, Huntington, West Virginia.[2] At the time, the building housed businesses on the first floor and apartments on the second. In March 2005, plaintiff was convicted by a jury in the Circuit Court of Cabell County on one count of first degree arson and one count of second degree arson. Both convictions pertained to the second fire set at the building.[3] Thereafter, plaintiff was sentenced by the presiding judge, defendant Dan O'Hanlon, to consecutive sentences of twenty years on the first degree arson conviction and ten years on the second degree arson conviction.

Plaintiff filed an appeal of his convictions with the Supreme Court of Appeals of West Virginia. The Court refused to hear the appeal. He then filed a Petition for a Writ of Habeas Corpus in the Circuit Court of Cabell County, which was denied. On appeal of the denial, the West Virginia Supreme Court affirmed plaintiff's conviction of first degree arson, but reversed his conviction of second degree arson, concluding that this conviction violated the Double Jeopardy Clause of the Fifth Amendment and Article III, Section 5, of the West Virginia Constitution. (*See Damron v. Haines*, 672 S.E.2d 271, 280-81 (W.Va. 2008)).

On February 5, 2009, plaintiff filed in this Court a petition pursuant to 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a person in state custody. In the petition, plaintiff

---

[2] Much of the procedural history is taken from pages 1-3 of the Memorandum Opinion and Order entered by the Honorable Robert C. Chambers on August 12, 2010 in *Damron v. Fox,* Case No. 3:09-cv-00098, a Petition for Writ of Habeas Corpus filed by plaintiff in this Court.
[3] Mr. Damron was acquitted on all remaining charges contained in the indictment.

2

alleged that the West Virginia Supreme Court erred in resolving his habeas petition by (1) ruling that the evidence presented at trial was sufficient to support his first degree arson conviction, (2) failing to reverse the conviction and remand for a new trial, (3) denying plaintiff's Sixth Amendment Confrontation Clause claim, (4) denying plaintiff's *Miranda* claim, and (5) denying plaintiff's claim of cumulative constitutional error. Ultimately, this Petition was dismissed by Order entered on August 12, 2010 by United States District Judge Robert C. Chambers.

On April 30, 2010, plaintiff, proceeding *pro se*, filed a Complaint in the above-captioned case, claiming entitlement to relief pursuant to 42 U.S.C. § 1983. (Docket No. 2). Plaintiff named as defendants Judge Dan O'Hanlon, William Fox, who is Warden of the Saint Mary's Correctional Center, and the State of West Virginia. (*Id.*). In his claim against Judge O'Hanlon, plaintiff argued that the Judge knew or should have known that "the 20 year and 10 year sentence that he imposed on the defendant was illegal." (Docket No. 2 at 4). Plaintiff further stated, "This suit pertains to the ten year sentence that was order[ed] to be vacated by the state supreme court of West Virginia on 12-26-09. And in no way does this suit have anything to do with the illegal twenty year sentence that is in the process of being overturned in the federal courts." (*Id).* Plaintiff's claim against Warden Fox was based upon the contention that the Warden was holding plaintiff illegally "by orders of the state of West Virginia." (*Id.*). Plaintiff's final claim, directed against the State of West Virginia, asserted that the State was wrongfully detaining him, because it knew that his incarceration was illegal. *(Id).* In his prayer for relief against the defendants, plaintiff sought monetary damages in the "sum of one million dollars," or an amount that "a jury deems appropriate," to compensate him and his three children for pain, suffering, mental anguish, and loss of happiness. (*Id.*).

On June 7, 2010, plaintiff moved the Court to amend his Complaint and add American Insurance Group Property/Casualty Claims Division ("AIG"), or the State Board of Risk, as a defendant. (Docket No. 6-1 at 4). His basis for the joinder of one or the other of these entities was that AIG insured state employees, and the Board of Risk insured the State. (Docket No. 6-1 at 5).

On June 16, 2010, defendant Warden Fox filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Procedure. (Docket No. 9). Defendant argued that prison wardens are absolutely immune from liability for incarcerating a prisoner pursuant to a valid court order and, thus, plaintiff's claim against defendant Fox should be dismissed for failing to state a claim upon which relief may be granted. (Docket No. 11 at 3). On June 21, 2010, defendant National Union Fire Insurance Company (misidentified in the Complaint as "AIG Property/Casualty Claim Division") likewise filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Procedure, (Docket No. 13), arguing that plaintiff's only claim against National Union is that it insures employees of the State of West Virginia and that allegation, even if true, is insufficient to allege any cause of action for which relief may be granted. (Docket No. 14 at 3).

In response to these Motions, on June 29, 2010, plaintiff petitioned once again to amend his Complaint to add National Union Fire Insurance Company and "any and all known or unknown Defendants."[4] (Docket No. 16). Plaintiff sought to add National Union Fire Insurance Company, because he had misidentified the company in his prior pleading, stating "My claim is if William Fox Warden and the Judge Dan-O-Hanlon and the state of West Virginia are covered under immunity then this insurance company is

---

[4] Plaintiff also filed a response to the Motions to Dismiss on July 22, 2010, but the response only addressed plaintiff's claims against Judge O'Hanlon.

4

liable for their actions or whoever their insurance provider is." On the same date, Plaintiff requested court-appointed counsel to represent him in this action. (Docket No. 17).

On June 29, 2010, plaintiff filed a "Motion for Discovery," requesting the Court to order defendants Warden Fox and National Union Fire Insurance Company to provide him with "any known exculpatory evidence and any and all documentation pertaining to [his] civil action." (Docket No. 18). Two weeks later, on July 13, 2010, plaintiff filed a "Motion for Exculpatory Evidence," requesting the Court to order defendant Judge O'Hanlon to provide plaintiff with copies of "any and all exculpatory evidence" and "the name of the insurance company and the insurance policy that the state holds" on behalf of defendant Judge O'Hanlon. (Docket No. 22).

On July 23, 2010, plaintiff submitted another Motion and accompanying Amended Complaint in which he sought leave to add an additional defendant, Frowde Lockhart, who plaintiff stated was a "bar owner" of the "Club Brass Room" in Huntington, West Virginia. (Docket Nos. 25-1, 26). Plaintiff alleged that Mr. Lockhart made erroneous victim impact statements, in which he proclaimed that plaintiff "burned his building down and destroyed his business [sic] and took away his only source of income while knowing or should [have known] it was false," as well as other defamatory statements and accusations. (*Id).* In this Amended Complaint, plaintiff also modified his prayer for relief, increasing his monetary demand against the defendants to $4,000,000.

On July 27, 2010, defendants Warden Fox and National Union Fire Insurance Company filed a Motion for a Protective Order, requesting the Court to stay plaintiff's discovery requests until the Court ruled on defendants' Motions to Dismiss. (Docket No.

5

27). On August 3, 2010, Plaintiff responded with a "Motion to Dismiss the Motion for a Protective Order." (Docket No. 30).

On August 18, 2010, Plaintiff filed three "Motion[s] for a Jury Trial," requesting that the Court "set up [his] case for a jury trial on all triable issues." (Docket Nos. 33, 34, 36). That same day, plaintiff filed three "Motions for Exculpatory Evidence," requesting the Court to order defendants Frowde Lockhart, the State of West Virginia, the Attorney General's Office, and Judge O'Hanlon to provide to plaintiff "any and all exculpatory evidence" and for the latter defendants to provide "the name of the insurance compan[ies] and insurance polic[ies]" which indemnify them. (Docket No. 36, 37, 38).

These Motions are now ripe for resolution by the Court.

## II.  **Standard of Review**

Pursuant to the provisions of 28 U.S.C. § 1915A, the Court must screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. In an analogous statutory provision, 28 U.S.C. § 1915 also requires an initial screening by the Court in each case in which a prisoner seeks to proceed *in forma pauperis* (without prepayment of fees and costs). The Court must dismiss the case, or any part of it, if the Complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; 28 U.S.C. § 1915.[5]

A "frivolous" case has been defined as one which is based upon an indisputably meritless legal theory, *Anders v. California*, 386 U.S. 738, 744 (1967); *Denton v. Hernandez,* 504 U.S. 25 (1992), or lacks "an arguable basis either in law or fact." *Neitzke*

---

[5]  Similarly, Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss frivolous and meritless complaints.

6

*v. Williams,* 490 U.S. 319, 325 (1989). Likewise, a Complaint fails to state a compensable claim, and therefore should be dismissed, when viewing the well-pleaded factual allegations in the Complaint as true and in the light most favorable to the plaintiff, the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court further clarified the "plausibility" standard in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. This Court is required to liberally construe *pro se* Complaints, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the Complaint still must contain sufficient factual allegations to support a valid legal cause of action. The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. <u>Analysis</u>

42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." In this action, plaintiff seeks monetary compensation for having been wrongfully sentenced to ten years in prison for a second degree arson conviction. In order to establish a *prima facie* case and avoid summary dismissal, plaintiff must allege facts in the Complaint, which are sufficient to support a plausible

7

cause of action under § 1983. *Bell Atlantic Corp v. Twombly, supra.* For the reasons set forth below, plaintiff fails to meet this threshold burden.

### A. <u>Deprivation of a Civil Right</u>

Plaintiff complains that he was deprived of his right to liberty by the imposition of a ten year sentence stemming from his wrongful conviction for second degree arson. However, plaintiff ignores the fact that his first degree arson conviction, which resulted in a twenty year sentence, was upheld by the West Virginia Supreme Court, and his challenge to the validity of that conviction in this Court has been rejected. These sentences were to run consecutively for a total sentence of thirty years. Plaintiff was convicted of the crimes in March 2005, and the ten year sentence for second degree arson was vacated by court order on December 26, 2009. During the entire relevant time period, plaintiff was serving his twenty year sentence; therefore, plaintiff never began to serve the additional ten year sentence which forms the basis of his Complaint. Inasmuch as plaintiff was not deprived of a federally protected civil right, he cannot maintain a claim under 42 U.S.C. § 1983.

### B. <u>Persons Acting Under Color of State Law</u>

Of the defendants joined or sought to be added to this litigation, only three arguably acted under color of state law. Plaintiff does not assert that National Union Fire Insurance Company ("National Union") and Mr. Frowde Lockhart are state entities, state officials, or employees of state entities.[6] Plaintiff describes National Union as an insurance company that provides indemnity coverage to state employees, and Mr.

---

[6] Fed. R. Civ. P. 15(a)(1), in relevant part, allows a party to amend a pleading once as a matter of course within 21 days after initial service of the pleading, or within 21 days after service of a responsive pleading or Rule 12(b) Motion. Fed R. Civ. P. 15(a)(2) allows amendments with leave of Court, and leave shall be freely given when justice so requires. Without addressing the issue of whether plaintiff's Motions to Amend meet these requirements, the Court will assume that the Motions have been granted for purposes of conducting the initial screening required by 28 U.S.C. § 1915.

Lockhart as a bar owner and self-proclaimed victim of the arson. Neither of these potential defendants is said to have acted in an official capacity or under color of state law.

Congress enacted 42 U.S.C. § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Scheuer v. Rhodes,* 416 U.S. 232, 243 (1974), quoting *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961). In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must present facts to show that: (1) the defendant deprived him or her of a federally protected civil right, privilege or immunity and (2) that the defendant did so under color of State law. *Perrin v. Nicholson*, 2010 U.S. Dist. LEXIS 105121, * 4 (D.S.C. 2010); *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999). "Purely private conduct, no matter how wrongful, injurious, fraudulent, or discriminatory, is not actionable under 42 U.S.C. § 1983." *Id.* at * 4-5; *see* also *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 721 (1961). "Although a private individual or corporation can act under color of state law, his, her, or its actions must occur where the private individual or corporation is a willful participant in joint action with the State or with an agent of the State." *Id.* at * 5 (citing *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)).

In *Conner v. Donnelly,* 42 F.3d. 220 (4th Cir. 1994), the Fourth Circuit Court of Appeals identified the following three situations in which conduct by a private entity would constitute "state action:"

> First, a private party that is regulated by the state acts under color of state law where there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. *(citations omitted).* Second a private party acts under color of state law where the state, through extensive regulation of the private

> party, has exercised coercive power or has provided such significant encouragement that the action must in law be deemed to be that of the state. *(citations omitted).* Finally, a private party acts under color of state law where "the private entity has exercised powers that are 'traditionally the exclusive prerogative of the state.'" *(citations omitted).*

*Id.* at 224.

Unless the actions of National Union and Mr. Lockhart, as described by plaintiff in his proposed Amended Complaint, fall within one of these three situations, National Union and Mr. Lockhart were not acting under color of state law.

### 1. National Union

Plaintiff's proposed Amended Complaint (Docket No. 16) asserts that National Union is the "insurer of the state" and therefore, is liable to plaintiff. Viewing this factual allegation as true and in the light most favorable to the plaintiff, the Complaint does not contain enough facts to state a claim for relief. All of the scenarios articulated by the Fourth Circuit in *Conner v. Donnelly, supra,* require there to be some action on the part of the private party that could be attributed to the State. In the present case, plaintiff makes no allegation that National Union acted at all. Plaintiff does not accuse National Union of participating in the imposition of the alleged wrongful sentence or in his detention. Instead, plaintiff seeks to hold National Union directly liable, simply because of its alleged business relationship it has with the State. 42 U.S.C. § 1983 only applies to *conduct occurring under color of state law,* not to the claims of a third-party seeking monetary damages under an indemnity agreement between an insured and insurer.

The Northern District of West Virginia recently considered a 42 U.S.C. § 1983 claim in which the plaintiff asserted a cause of action against National Union Fire Insurance Company for the same reason cited by plaintiff in this matter. *Scible v. Miller*,

10

2006 U.S. Dist. LEXIS 54716 (D. W. Va. 2006). In ruling on National Union's Motion to Dismiss, United States Magistrate Judge John S. Kaull stated that "plaintiff can only sue National Union to the extent that National Union participated in the alleged unconstitutional acts;" however, "plaintiff has failed to make any specific allegations against National Union" and therefore, "plaintiff fails to state a claim for which relief can be granted against National Union and the complaint should be dismissed as to that defendant." *Id.* at * 15-16.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that plaintiff's first and second Amended Complaints against National Union Fire Insurance Company fail to state a claim under 42 U.S.C. § 1983 and, therefore, fail to survive this Court's 28 U.S.C. § 1915 screening.[7]

## 2. Frowde Lockhart

Similarly, plaintiff provides no legal basis for his proposal to add Mr. Lockhart as a defendant in this § 1983 action. Reviewing the three situations set forth in *Conner v. Donnelly, supra,* the actions of Mr. Lockhart's cannot be attributed to the State. According to plaintiff's proposed Amended Complaint, Mr. Lockhart allegedly made defamatory and fraudulent comments about plaintiff in a victim impact statement, to the Court at sentencing, and to the parole board in order to keep plaintiff incarcerated. Mr. Lockhart was not regulated or coerced by the State when these statements were

---

[7] In the same proposed amended complaint which asserts a cause of action against National Union, plaintiff proposes to add "any and all unknown Defendants" to his 42 U.S.C. § 1983 action, presumably to include any other insurance companies that may cover the defendants. (Docket No. 16). Plaintiff offers no factual allegations or additional information in this regard. *Id.* Despite construing the proposed complaint liberally and in the light most favorable to the plaintiff, the bare request to add "any and all unknown defendants" does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007).

11

made, nor was he exercising a power that traditionally was the "exclusive prerogative of the state." *Conner v. Donnelly, supra.*

Plaintiff's claim against Mr. Lockhart is nothing more than a garden variety defamation claim, and an "alleged act of defamation of character or injury to reputation is not actionable under 42 U.S.C. § 1983," *Dickerson v. City of Charleston Police Department,* 2009 WL 4920166, *4 (D.S.C.), citing *Paul v. Davis,* 424 U.S. 693, 697-710 (1976), because "a defamed person has not been deprived of any right, privilege, or immunity secured to him by the Constitution or the laws of the United States." *Miller v. Jack,* 2007 WL 2050409, *6 (N.D.W.Va. 2007); *see* also *Fleming v. West Virginia,* 2009 WL 960217 (S.D.W.Va). Civil rights statutes, such as 42 U.S.C. § 1983, do not impose liability for violations of duties arising under a State's tort law. *Dickerson v. City of Charleston Police Department, supra,* citing *DeShaney v. Winnebago County Dep't of Soc. Ser.,* 489 U.S. 189, 200-203 (1989). It should also be noted that to the extent Mr. Lockhart made these statements while acting as a witness to a court proceeding, he is afforded absolute immunity from civil liability for damages. "It is well settled that a private witness in a state court proceeding cannot be sued for damages under 42 U.S.C. § 1983 because 'it is clear that § 1983 did not abrogate the absolute immunity existing at common law. . .'" *Dickerson v. City of Charleston Police Department, supra*, citing *Briscoe v. LaHue,* 460 U.S. 325, 327-46 (1983). Viewing plaintiff's allegations against Mr. Lockhart as a claim for defamation under state tort law, "the District Court cannot consider it under its supplemental jurisdiction," because, as will become apparent herein, plaintiff "has failed to state any other claim for which relief can be granted over which the District Court has original jurisdiction." *Fleming v. West Virginia, supra* at *5.

12

Therefore, the undersigned proposes that the presiding District Judge **FIND** that plaintiff's proposed third and fourth Amended Complaints fail to state a claim against Frowde Lockhart under 42 U.S.C. § 1983 and, therefore, fail to survive this Court's 28 U.S.C. § 1915 screening. Moreover, the undersigned proposes that the presiding District Judge **FIND** that this Court does not retain subject matter jurisdiction over a state court claim of defamation against Mr. Lockhart; therefore, plaintiff's third Amended Complaint against Mr. Lockhart should be dismissed.

### C. Immunity of State Actors

The remaining parties include the presiding Judge in plaintiff's criminal trial, the Warden of the correctional facility at which plaintiff is incarcerated, and the State of West Virginia. For the reasons set forth below, all of these defendants are immune from liability under the facts alleged in the Complaint.

#### 1. State of West Virginia

As a general proposition, the doctrine of sovereign immunity contained in the Eleventh Amendment of the United States Constitution bars suit against a State. In *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989), the United States Supreme Court recognized that "the doctrine of sovereign immunity is one of the well-established common-law immunities and defenses that Congress did not intend to override." Considering the principal issue in that case of whether States are "persons" subject to suit under § 1983, the Court found that Congress did not envision the statute to include States as potential defendants. "The Court held that interpreting the words '[e]very person' to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo,* 502 U.S. 21, 26 (1991),

13

citing *Will v. Michigan Department of State Police, supra* at 65. Inasmuch as the State of West Virginia is not a person subject to monetary damages under a § 1983 claim, the undersigned proposes that the presiding District Judge **FIND** that plaintiff's Complaint fails to state a claim against the State of West Virginia under 42 U.S.C. § 1983 and, therefore, fails to survive this Court's 28 U.S.C. § 1915A screening.

The related question is whether state officials are likewise immune from prosecution under a § 1983 case. The Supreme Court also addressed this issue in *Will v. Michigan Department of State Police, supra,* holding "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. at 71. As elucidated by the Supreme Court, "[o]bviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.*

The Court later clarified its holding, making a distinction between officials acting in their official capacities and officials acting in their personal capacities under color of state law. *Kentucky v. Graham,* 473 U.S. 159 (1985); *Hafer v. Melo, supra.* The former are immune from prosecution for money damages under § 1983, while the latter are not. The Court explained that because the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, the target of such a claim is the entity's "policy or custom." *502 U.S.* at 25, citing *Kentucky v. Graham, supra* at 166. "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* Therefore, if the claims against the remaining two defendants are "official-capacity" claims, they will enjoy the same immunity as the State of West Virginia. If the claims are "personal-

capacity" claims, they will not be afforded the same protection, but they "may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Id.*

### 2. Judge Dan O'Hanlon

Plaintiff does not specify in his Complaint whether he sues Judge O'Hanlon in his official or personal capacity. (Docket No. 2). As discussed above, in his official capacity, Judge O'Hanlon is not a "person" for purposes of 42 U.S.C. § 1983 and is not subject to a claim for money damages thereunder. *Will v. Michigan Dep't of State Police, supra.* In his personal capacity, Judge O'Hanlon is a properly named defendant, but the Complaint may still fail on initial screening if the claims against Judge O'Hanlon are malicious, frivolous, or meritless, or if Judge O'Hanlon enjoys immunity under other state or federal law. Construing the Complaint in the light most favorable to the plaintiff, the Court will presume that the claims against Judge O'Hanlon have been asserted against him in his "personal" capacity.

Even in his personal capacity, Judge O'Hanlon is cloaked with absolute judicial immunity against the claims asserted by plaintiff. In *Pierson v. Ray*, 386 U.S. 547 (1967), the Supreme Court granted certiorari to consider whether a judge was liable for damages under 42 U.S.C. §1983 for an unconstitutional conviction. The Court presented its rationale in applying the doctrine of judicial immunity:

> Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction...This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences"...It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied

> litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

*Pierson v. Ray*, 386 U.S. 547, 553-54 (1967).

Two requirements must be met in order for a Court to apply judicial immunity. First, "the judge's action cannot have been undertaken in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978). The question is "whether at the time [the judge] took the challenged action, he had jurisdiction over the subject matter before him," and, in answering that question, "the scope of the judge's jurisdiction must be construed broadly." *Id.* at 356. The second condition is that the act must be a "judicial act." *Id.* at 360-62. The determination of whether an act by a judge is a "judicial act" relates "to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* at 362.

Judge O'Hanlon indisputably had jurisdiction over plaintiff's criminal case. Judge O'Hanlon is a member of West Virginia's Sixth Judicial Circuit, which encompasses Cabell County, the county in which plaintiff was convicted of arson. The Circuit Courts are the State's only general jurisdiction trial courts; among other matters, the Circuit Courts have jurisdiction over all felonies and misdemeanors. Judge O'Hanlon was the presiding judge at plaintiff's trial and had the authority to impose a sentence upon plaintiff's conviction.

Thus, the only remaining inquiry is whether the act of which plaintiff is complaining is a "judicial act." Plaintiff's assertion of error is that Judge O'Hanlon knew or should have known that the sentence which he imposed was illegal. Although the ten year sentence imposed by Judge O'Hanlon was vacated on appeal, the Fourth Circuit

16

has adopted the Supreme Court's holding that a judge does not forfeit immunity because an action was taken in error, malicious, or exceeded authority. *Id.* at 355; *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985). Accordingly, while Judge O'Hanlon's act of sentencing was arguably "taken in error," that error does not affect the obvious truth that the act of sentencing a defendant is without a question a "judicial act."

Therefore, the undersigned proposes that the presiding District Judge **FIND** that Judge O'Hanlon is not a "person" under 42 U.S.C. § 1983 in his official capacity and is entitled to absolute judicial immunity in his personal capacity for the judicial act of sentencing Plaintiff. Consequently, plaintiff's Complaint fails to state a claim against Judge O'Hanlon under 42 U.S.C. § 1983 and, thus, fails to survive this Court's 28 U.S.C. § 1915A screening.

### 3. Warden William Fox

Plaintiff also does not specify whether he sues Warden Fox in his official or personal capacity. (Docket No. 2). The same ground discussed above applies to Warden Fox in his official capacity; he is not a "person" for purposes of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989).

In his personal capacity, Warden Fox is equally immune from liability pursuant to established federal law, which provides that public officials "charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." *Osborne v. County Comm'n*, 2003 U.S. Dist. LEXIS 26713, *22 (S.D. W. Va. Sept. 29, 2003), quoting *Turney v. O'Toole,* 898 F.2d 1470, 1472 (10th Cir. 1990). "Facially valid" does not mean "lawful;" an erroneous order can be valid. *Turney v. O'Toole,* 898 F.2d 1470, 1473 (10th Cir. 1990); *See, e.g., Baker v. McCollan*, 443 U.S. 137, 143-44 (1979). State officials are not

"required to act as pseudo-appellate courts scrutinizing the orders of judges." *Id.*, citing *Valdez v. City & County of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989). Simple fairness requires that state officers "not be called upon to answer for the legality of decisions which they are powerless to control." *Id.*

For the reasons stated above, Warden Fox is immune from liability for his act of detaining plaintiff pursuant to a court order. Furthermore, plaintiff's only assertion of error against Warden Fox is that he is detaining plaintiff "illegally" by orders of the State of West Virginia. Plaintiff's Complaint is expressly limited to his vacated ten year sentence. As previously noted, plaintiff's twenty year sentence was affirmed by the Supreme Court of Appeals of West Virginia. *Damron v. Haines*, 223 W. Va. 135, 145 (W. Va. 2008). Consequently, Warden Fox is not, in fact, "illegally" detaining plaintiff. Thus, this assertion by plaintiff is factually erroneous and, therefore, is frivolous.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that Warden Fox is not a "person" under 42 U.S.C. § 1983 in his official capacity and is entitled to immunity in his personal capacity for detaining plaintiff pursuant to a court order. Consequently, plaintiff's Complaint fails to state a claim against Warden Fox under 42 U.S.C. § 1983 and, thus, fails to survive this Court's 28 U.S.C. § 1915A screening.

### IV. <u>Proposal and Recommendations</u>

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows**:**

1. Plaintiff's Complaint (Docket No. 2) be **DISMISSED** with prejudice pursuant to the screening provisions of 28 U.S.C. § 1915A;

2. Plaintiff's application to proceed without prepayment of fees or costs (Docket No. 1) be **DENIED** pursuant to 28 U.S.C. §1915(e)(2)(B);

18

3. Plaintiff's Motions to Amend (Docket Nos. 6, 16, 25, and 26) be **GRANTED,** and the Amended Complaints be summarily **DISMISSED** with prejudice pursuant to the screening provisions of 28 U.S.C. § 1915A and 28 U.S.C. § 1915; and

4. All remaining motions in this case (Docket Nos. 9, 13, 17, 18, 22, 27, 33, 34, 35, 36, 37, 38) be **DENIED** as moot in light of the dismissal of plaintiff's Complaint and Amended Complaints.

Plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and counsel of record.

**ENTERED:** October 12, 2010.

_____
Cheryl A. Eifert
United States Magistrate Judge